United States District Court
for the Southern District of Illinois

| | | |
|---|---|---|
| John Bilski, individually and on behalf of all others similarly situated, | : | |
| | : | |
| | : | 03-cv-772 GPM |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| AIM International Funds, Inc., | : | |
| A I M Advisors, Inc., | : | |
| INVESCO International Funds, Inc., | : | |
| INVESCO Funds Group, Inc., | : | |
| T. Rowe Price International Funds, Inc., and | : | |
| T. Rowe Price International, Inc., | : | |
| | : | |
| Defendants. | : | |

**Defendants' Memorandum in Support of Motion
to Dismiss the Complaint : Rule 12(c) and Rules 23.1 and 12(b)(1)**

**Preliminary**

AIM International Funds, Inc. and A I M Advisors, Inc. (collectively "AIM"), INVESCO International Funds, Inc. and INVESCO Funds Group, Inc. (collectively "INVESCO"), and T. Rowe Price International Funds, Inc. and T. Rowe Price International, Inc. (collectively "T. Rowe Price") move to dismiss the Complaint on the grounds that there is neither an express nor an implied private right of action under § 36(a) of the Investment Company Act of 1940 — the sole federal claim asserted in the Complaint — and the Court should decline to exercise supplemental jurisdiction over the state law claims. Furthermore, the claims are derivative in

nature, and plaintiff has failed to make demand on the Boards of Directors of the Funds, thus failing to meet the requirements of Rule 23.1 and Maryland law.


## Point I –

### There is neither an express nor an implied private right of action under § 36(a)

It is undisputed that there is no express private right of action under § 36(a) of the Investment Company Act of 1940.

In several recent landmark opinions, the Supreme Court, voicing its ever-increasing hostility to implied private rights of action under federal legislation, has made clear that where (as in § 36(a))[1] the text and structure of the statute do not demonstrate that a private right of action and remedy were intended by Congress, there is no implied private right of action. Gonzaga University v. Doe, 536 U.S. 273, 283-86, 153 L. Ed. 2d 309, 322, 122 S. Ct. 2268, 2275-78 (2002) (Court "reject[s] … permit[ing] anything short of an unambiguously conferred

---

[1] Section 36(a), 15 U.S.C. § 80-35(a), provides:

> "The Commission is authorized to bring an action in the proper district court of the United States, or in the United States court of any territory or other place subject to the jurisdiction of the United States, alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts---
>
> (1) as officer; director, member of any advisory board, investment adviser, or depositor; or
>
> (2) as principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company.
>
> If such allegations are established, the court may enjoin such persons from acting in any or all such capacities either permanently or temporarily and award such injunctive or other relief against such person as may be reasonable and appropriate in the circumstances having due regard to the protection of investors and to the effectuation of the policies declared in section 80a-1(b) of this title." (emphasis supplied)

right" to support an implied private right of action); <u>Alexander</u> v. <u>Sandoval</u>, 532 U.S. 275, 279-80 and 286, 149 L. Ed. 2d 517, 528-31, 121 S. Ct. 1511 (2001).  The inquiry on the existence of an implied private right of action "begins with the text and structure of the statute … and <u>ends</u> once it has become clear that Congress did not provide a cause of action." (emphasis supplied) <u>Sandoval</u>, 532 U.S. at 288, n.7; <u>Gonzaga</u>, 536 U.S. at 283, 285-86.  There is then to be no review of the legislative history or the overall purpose of the legislation. <u>Id</u>.[2]

Thus, there is no implied private right of action for damages where [1] the statutory provision is not "phrased in terms of the persons benefited" (i.e., does not specifically identify the persons to be benefited if a violation of the statute occurs), but merely states "institutional policy and practice" (i.e., outlawing conduct in general or "focus[ing] on the person regulated rather than the individuals protected"), or [2] does not set forth a damages remedy, or [3] it is not clear that a remedy is granted to a class of persons including the named plaintiff.  <u>Sandoval</u>, 532 U.S. at 286-91; <u>Gonzaga</u>, 536 U.S. at 283-88[3]. Accord : <u>Shockley</u> v. <u>Svoboda</u>, 342 F.3d 736, 741 (7th Cir. 2003) ("'where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit'").

---

[2]  The Supreme Court's focus on the text of the statute for determining whether there was an implied private right of action is consistent with the guidelines for statutory construction articulated earlier by Chief Judge Easterbrook in <u>Walton</u> v. <u>United Consumers Club, Inc.</u>, 786 F.2d 303, 310 (7th Cir. 1986) ("Courts should confine their attention to the purposes Congress sought to achieve by the words it used.  We interpret texts.  The invocation of disembodied purposes, reasons cut loose from language, is a sure way to frustrate rather than implement these texts.").

[3]  The heightened emphasis on text and structure of the statute in **Sandoval** and <u>Gonzaga</u> has been recognized by legal commentators and the courts. As for <u>Sandoval</u>, see  Leading Case,  115 Harv. L. Rev. 497, 507 (2001) ("the Court's decision in <u>Sandoval</u> represents a significant departure from its previous implied private remedy jurisprudence"); <u>Alexander</u> v. <u>Sandoval</u> and Its Implications for Disparate Impact Regimes, 102 Colum. L. Rev. 1613, 1619 (2002) ("as it stands today, legislative intent – as revealed by statutory language and structure – is the sole touchstone in the implied right of action inquiry"). As for <u>Gonzaga</u>, see Resnick, Constricting Remedies : The Rehnquist Judiciary, Congress, and Federal Power, 78 Ind. L. J. 223, 232-33 (2003) (<u>Gonzaga</u> ruled that, "absent specific directives from Congress, no private rights of action would be inferred"); <u>Shockley</u> v. <u>Svoboda</u>, 342 F.3d 736, 741 (7th Cir. 2003).

Here, the text and structure of §36(a) demonstrate that there is no implied private right of action for damages. The section does not identify shareholders like plaintiff as parties who are authorized to bring an action or as beneficiaries with rights created in the section; rather, it reveals that shareholders are not granted any such right thereunder by specifically identifying only the U.S. Securities and Exchange Commission (the "SEC") as the entity which is authorized to enforce the fiduciary duty standard of conduct adopted therein. Sandoval, 532 U.S. at 290 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others"); Dersch Energies, Inc. v. Shell Oil Co., 314 F.3d 846, 857 (7th Cir. 2002), aff'g, 2003 U.S. Dist. LEXIS 22381, at **8-9 (S.D. Ill. 2001). Accord: Scattered Corp. v. Chicago Stock Exchange, Inc., 98 F. 3d 1004, 1005-06 (7th Cir. 1996) (Easterbrook, J.).

Section 36(a) also "focus[es] on the persons regulated" (i.e., the executives and firms identified in subsections [1] and [2]) rather than the individuals protected.[4] The only reference to investors is at the end of the section, and it states that their interests are to receive "due" regard (along with numerous "policies" of the ICA) in injunctive actions brought by the SEC. Nowhere does § 36(a) authorize an action for damages by investors or anyone else, as required by the current Supreme Court test. Gonzaga, 536 U.S. at 284-85 ("a plaintiff suing under an implied right of action still must show that the statute manifests an intent to 'create not just a private right but also a private remedy'"); Sandoval, 532 U.S. at 286 ("Statutory intent on this latter point is determinative"). In sum, as in Sandoval, 532 U.S. at 288, "rights-creating language … is completely absent from [§ 36(a)]," and its language and structure show that no implied private right of action or remedy thereunder was ever intended by Congress. See also: Gonzaga, 536

---

[4] In Burks v. Lasker, 441 U.S. 471, 478, 60 L. Ed. 2d 404, 412-13, 99 S. Ct. 1831, 1837 (1979), the Supreme Court stated that "federal law in this area is largely regulatory and prohibitory in nature …. the [ICA] functions primarily to 'impos[e] *controls and restrictions* on the internal management of investment companies'" (citation omitted) (emphasis in original).

U.S. at 283-84 ("we have held that the question whether Congress ... intended to create a private right of action [is] definitively answered in the negative" where the provision "by its terms grants no private rights to any identifiable class").

Finally, when Congress expressly creates a private cause of action in another section of the same statute (especially for the same class of plaintiffs), "it is highly improbable that Congress absentmindedly forgot to mention an intended private action." Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 20, 62 L. Ed. 2d 146, 155, 100 S. Ct. 242, 247 (1979) (internal quotation marks omitted). Obviously, when Congress wished to provide a private remedy for shareholders of mutual funds, "it knew how to do so and did so expressly." Id. at 20-21. Section 36(b), for example, expressly provides for the enforcement of its substantive standards "by the Commission, or by a security holder of [the] registered investment company," under limited conditions. 15 U.S.C. § 80a-35(b). There is no such language authorizing an action "by a security holder" of a fund in § 36(a).[5] For all of these reasons, the text and structure of § 36(a) provide no reason for recognizing any implied private right of action thereunder, and the Court should reject plaintiff's attempt to assert claims under that section.

Case law before Sandoval and Gonzaga finding an implied private right of action under § 36(a) is no longer pertinent. Those cases, e.g. In re Nuveen Fund Lit., 1996 U.S. Dist. LEXIS

---

[5] Subsequent to Sandoval, lower courts have rejected efforts to find implied rights of action under the ICA. In re Merrill Lynch & Co. Inc., 272 F. Supp. 2d 243 (S.D.N.Y. 7/2003) (no private right of action under § 34(b) "notably since the Second Circuit's decision in Olmstead [in 2002] there appear to have been no decisions in which a court has found an implied private right of action under any section of the 1940 Act"). See Olmstead v. Pruco Life Ins. Co., 283 F.3d 429 (2d Cir. 2002) (no private right of action under §§ 26(f) and 27(i); meVC Draper Fisher Jurvetson Fund v. Millenium Partners, 260 F. Supp. 2d 616 (S.D.N.Y. 3/2003) (no private right of action under § 12(d)(1)(A)); White v. Heartland High-Yield, 237 F. Supp. 2d 982 (E.D. Wis. 12/2002) (no private right of action under §§ 22 and 34(b)); see also Dorchester Investors v. Peak International Ltd., 134 F. Supp. 2d 569 (S.D.N.Y. 3/2001) (no private right of action under § 34(b)).

8071, at *11-17 (N.D. Ill. June 5, 1996)[6] were all decided for reasons (e.g., legislative history,
purpose of statute, etc.) no longer to be considered under the Supreme Court holdings in
Sandoval and Gonzaga.

**Point II –**

**The Court should decline to exercise supplemental
jurisdiction over the common law claims.**

Since plaintiff's § 36(a) claims cannot stand, this Court should decline to exercise
supplemental jurisdiction over plaintiff's common law claims, particularly at this early stage of
the litigation before the parties and the Court have engaged in significant pre-trial proceedings.
See 28 U.S.C. § 1367(c)(3); Van Harken v. City of Chicago, 103 F.3d 1346, 1354 (7th Cir. 1997)
(articulating "presumption … in favor of dismissing the state claim without an examination of
the merits, when the federal claim falls out before trial"); Bell v. Irwin, 2002 U.S. Dist. LEXIS
7967 at *26, 27 (S.D. Ill., May 2, 2002), aff'd, 321 F.3d 637 (7th Cir. 2003).  Dismissal would
especially further the interest of efficiency since identical claims are pending against the same
AIM defendants for almost the same five-year period in an action in Circuit Court of the Third
Judicial Circuit, Madison County, Illinois, i.e., Parthasarathy v. T. Rowe Price International
Funds, Inc., 03L 1253.

If the Court accepts the arguments in Points I and II, it need not consider the argument in
Point III.

---

[6] Recently, in Green v. Nuveen Advisory Corp., 295 F. 3d 738, 744 n.9 (7th Cir. 2002), the Seventh Circuit, while
expressly declining to rule on whether there was an implied private right of action under § 36(a) since the dismissal
of that claim had not been appealed, cited Boland v. Engle, 113 F. 3d 706 (7th Cir. 1997), which, at 715 n.9, had
noted that the Supreme Court had "cast doubt on the type of analysis that courts have used to find implied rights of
action."  White, 237 F. Supp. 2d at 986.  With Sandoval and Gonzaga, the Supreme Court has made clear that there
is no longer even any doubt.

Point III –

In any event, the claims in this action are derivative
and the failure to make demand is fatal  both under
Rule 23.1 and Maryland law.[7]

## A.  The derivative nature of the claims

An examination of the Complaint shows that plaintiff himself has alleged that **the direct injury** caused by the supposed failure of Defendants to properly value shares of the Funds **is suffered by the Funds**.  The Complaint alleges in ¶¶ 38 and 39 that "due to the use of stale prices by Defendants in valuing their fund shares", "market timers" who purchased shares of the Funds paid less to the Funds than they should have paid, and "market timers" who redeemed shares of the Funds received more from the Funds than they should have received.  In both instances, **the Funds** allegedly suffered an improper diminution of their net asset values ("NAV"):  **the Funds** received too little from "market timers" for their purchases of shares of the Funds and **the Funds** paid out too much  to "market timers" to redeem their shares of **the Funds** [Id.] .

The alleged effect of the conduct is summarized in ¶¶ 42 and 44 of the Complaint:

> "Market timing traders pay cash to Defendants' **funds** when they purchase discounted shares. Market timing traders receive cash from Defendants' **funds** when they sell their shares at a premium. Defendants' **fund NAV is diluted in both instances.** When market timing traders are able to buy shares at a discount, Defendants' **fund assets suffer dilution** because the cash received by the **funds** for each of the shares purchased is less than the per share value of the underlying foreign securities due to the stale pricing method utilized by Defendants. Likewise, when market timing traders are able to sell (redeem) shares at a premium, Defendants' **fund assets suffer dilution** because the cash paid out by the **funds** for each of the shares redeemed is greater than the per share value of the underlying securities, again due to the stale pricing method utilized by Defendants. In both instances,

---

[7] We recognize and acknowledge that this Court has recently ruled otherwise, albeit in a different context.

when Defendants receive less cash when issuing and pay out more cash when redeeming market timing trader shares than supported by the value of the underlying foreign securities, the result is a dilution of Defendants' **funds'** cash. Because the cash held by the **funds** is one of the assets that are valued in setting the daily **fund** NAV, it follows that the diluted fund cash position causes the fund NAV to be diluted as well. Due to the stale pricing method utilized by Defendants, long term buy and hold shareholders have incurred a dilution in the NAVs of their shares and the wealth represented by that diluted amount has been transferred to market timing traders." (emphasis and bolds added)

and:

"Because it is such an attractive low risk trading vehicle to market timers, Defendants' **funds** experience increased trading and transaction costs, disruption of planned investment strategies, forced and unplanned portfolio turnover (including the liquidation of investments to meet market timer redemption requests), lost opportunity costs and asset swings that negatively impact **fund** operations, performance and the ability of the **funds** to provide a maximized return to long term shareholders." (emphasis and bolds added)

Thus, the text of the Complaint, itself, makes clear that the claims are derivative, not direct. The alleged "injury" in this case is that **the Funds** are not receiving enough money for shares they sell to "market timers" and are paying too much money for shares when they redeem them from "market timers". In both instances, the alleged "harm" is that **the Funds** are deprived of the correct amount of money they are entitled to as a result of those transactions. Shareholders, however, are affected only indirectly in that the value of their shares is based on the net asset values of the Funds. Since the net asset values of the Funds are, allegedly, less than they should have been, the values of plaintiff's holdings in the Funds are less than they should be.

**This is a classic derivative claim, not a direct claim**.  Waller v. Waller, 187 Md.

185, 189-90, 49 A. 2d. 449, 452 (1946):[8]

> "It is a general rule that an action at law to recover damages for an
> injury to a corporation can be brought only in the name of the
> corporation itself acting through its directors, and not by an
> individual stockholder, though the injury may incidentally result in
> diminishing or destroying the value of the stock.  The reason for
> this rule is that the cause of action for injury to the property of a
> corporation or for impairment or destruction of its business is in
> the corporation, and such an injury, although it may diminish the
> value of the capital stock, is not primarily or necessarily a damage
> to the stockholder, and hence the stockholder's derivative right can
> be asserted only through the corporation." (emphasis added)

Accord: Danielewicz v. Arnold, 137 Md. App. 601, 616, 769 A. 2d 274, 283 (2001) (same); In re

Merrill Lynch & Co., Inc. Research Reports Sec. Lit., 272 F.Supp.2d 243, 265 (S.D.N.Y. 2003)

(under Maryland law, where the injury is a reduction of value of a corporation, shareholder does

not have standing to bring a direct action since a "loss of investment value resulting from breach

of a duty owed to a corporation does not give rise to a direct cause of action by the corporation's

shareholders"); Dreyfus Aggressive Growth Mutual Fund, 2000 U.S. Dist. LEXIS 94 at *14

(same).

Danielewicz, 137 Md. App. at 611-22, 769 A. 2d at 280-86, is in point and confirms that

plaintiff's claims are derivative.  There, the daughter of a deceased shareholder of a corporation

(AFS) complained that AFS had been improperly compelled to issue too many shares to another

AFS stockholder in exchange for his stock in another corporation (AS&S).  The plaintiff

"averred that the 1987 transaction was unfair to AFS because it overvalued the AS&S stock,

---

[8] In determining whether a claim is direct or derivative, the Court must look to the law of the Funds' state of
incorporation.  Kamen v. Kemper Financial Services, 500 U.S. 90, 97-99 (1991); In re Dreyfus Aggressive Growth
Mutual Fund Litigation, 2000 U.S. Dist. LEXIS 94 at *13 (S.D.N.Y. 2000) (Baer, J.).  As further explained in
Meyers v. Brinson Advisors, Inc., Dkt. No. 02-CV-0222-DRH (S.D. Ill. July 22, 2002), the test is the true nature of
the claims in the pleadings: "characterizations in the pleadings are not controlling."  Accord:  Seidel v. Allegis
Corp., 702 F. Supp. 1409, 1411 (N.D. Ill. 1989) (Marovich, J.); Kalmanovitz v. G. Heileman Brewing Co., Inc., 595

resulting in overpayment for [the other shareholder's] shares of AS&S . . ." (at 280).  Citing

Waller, the Court dismissed the plaintiff's direct claim on the ground that she "lacked standing to

sue in an individual capacity", but rather had at most a derivative claim (at 286).

In Avacus Partners LP v. Brian, 1990 Del. Ch. LEXIS 178, at **20-21 (Del. Ch. 1990),

the Court held that a shareholder could bring only a derivative claim to recover for harm caused

when a corporation had received "grossly inadequate consideration" in connection with a

merger, explaining:

> "A wrong is derivative in nature when it injures the
> shareholders indirectly and dependently through direct injury to the
> corporation [citation omitted].
> To illustrate, if a board of directors authorizes the issuance of
> stock for no or grossly inadequate consideration, the corporation is
> directly injured and shareholders are injured derivatively."

Accord: Gregory v. Correction Connection, Inc., 1991 U.S. Dist. LEXIS 3659 at * 44 (E.D. Pa.

1991) ("In Delaware, a shareholder's allegations that a board of directors committed waste by

authorizing the issuance of stock for inadequate consideration are derivative in nature"). [9]

Any reliance on Strougo v. Bassini, 282 F. 3d 162, 170 (2d Cir. 2002) would be

misplaced.  The Fund there (unlike the Funds here) was a closed-end fund whose shares were

traded on the New York Stock Exchange. Id. at 165.  The alleged wrong in Strougo involved a

rights offering which required holders of Fund shares to purchase additional shares if they were

to avoid having their shareholdings diluted as a result of purchases of additional Fund shares by

---

F. Supp. 1385, 1399 (D.Del. 1984), aff'd, 769 F.2d 152 (3d Cir. 1985) ("[w]hether a claim is individual or derivative is determined from the body of the complaint, not the label employed by counsel.").

[9] As the Seventh Circuit stated in Kennedy v. Venrock Associates, 348 F.3d 584, 590 (7th Cir. 2003), in determining "the choice between derivative and direct suits," "Maryland uses the same basic approach (albeit formulated somewhat differently) to derivative status as Delaware does" (parentheses in original).  The Seventh Circuit has also stated that Delaware is "today's dominant corporate jurisdiction." Kamen v. Kemper Financial Services, Inc., 908 F.2d 1338, 1343 (7th Cir. 1990), rev'd o.g., 500 U.S. 90 (1991) (Delaware is "the Mother Court of corporate law"). Maryland's highest court has also stated that "respect" is "properly accorded [to] Delaware decisions on corporate law." Werbowsky v. Collomb, 362 Md. 581, 618, 766 A.2d 123, 143 (Md. 2000).

other shareholders. Thus, the wrong in Strougo was targeted at and suffered by individual shareholders.[10] Unlike the situation we are presented with here, the Court in Strougo concluded that the plaintiff had a direct claim because he was being compelled either to purchase additional shares or face a direct harm to himself. If the "harm" at bar was suffered, it was suffered **directly** by the Funds, which were the targets of the "market timers". Plaintiff, by contrast, would be harmed only **indirectly** in that the value of his shares is allegedly less than it should be. Plaintiff has not been compelled to do anything in his individual capacity. Plaintiff was not a target of the alleged "market timers", and was not himself involved, in any way, with the "market timers" or their trading. Rather, if plaintiff was harmed, he was harmed only indirectly because the "market timers" allegedly caused the Funds' net asset values to be improperly reduced, thereby indirectly causing the value of plaintiff's shareholdings to be less than it should have been.

Thus, plaintiff's claims are derivative, and, accordingly, are subject to the requirements of Rule 23.1 and Maryland law on the procedure for derivative actions.

## B.  The failure to make demand

The Complaint contains no allegation that plaintiff made a demand on the Funds' Boards of Directors or that a demand on the Boards of Directors was excused as futile. In fact, the Complaint does not even mention Boards of Directors. For that reason, without more, the Complaint must be dismissed for failure to comply with Rule 23.1 Fed. R. Civ. P.

---

[10]   As the Court in Strougo explained, 282 F.3d at 166:

> "The plaintiff asserts that this sort of rights offering is coercive because it penalizes shareholders who do not participate."

and:

> "This put pressure on every shareholder to 'pony up' and purchase more shares, enabling the Fund to raise new capital and thereby increase its asset holdings." [Id.]

Rule 23.1, Fed. R. Civ. P., requires allegations, with particularity, of the efforts made to obtain the relief requested or an explanation of the futility of any such demand on the Board of Directors:

> "<u>The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors</u> or comparable authority and, if necessary, from the shareholders or members, <u>and the reasons for the plaintiff's failure to obtain the action or for not making the effort</u>." (emphasis supplied).

Accord:  <u>Silver</u> v. <u>Allard</u>, 16 F. Supp. 2d 966, 969-70 (N.D. Ill. 1998) (Norgle, J.) ("23.1 requires the shareholder to 'allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors … and the reasons for the plaintiff's failure to obtain the action or for not making the effort'").  See also:  <u>Kamen</u> v. <u>Kemper Fin. Serv.</u>, 939 F. 2d 458, 460 (7th Cir. 1991).

* * *

The Maryland Court of Appeals in <u>Werbowsky</u> v. <u>Collomb</u>, 766 A.2d 123, 362 Md. 581 (Md. 2001), recently stressed that, in these circumstances, a plaintiff's pre-suit demand obligation in derivative actions under Maryland law is absolute.  It held that a plaintiff shareholder must first make a demand on the board of directors to remedy the alleged wrong to the corporation before commencing litigation on that alleged wrong (at p.144).  It emphasized that "[t]he demand requirement is important" (<u>id</u>.) and that the so-called "futility-exception" to that demand requirement was "a very limited exception", stating (<u>id</u>.):

> "[The futility-exception is] to be applied <u>only</u> when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand,

would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." (emphasis added).

Here, plaintiff has not made, or alleged the making of, any demand on the Funds' Boards of Directors to take any action. He also does not have, or even offer, any excuse for failing to make the requisite demand on the Funds' Boards of Directors. Thus, under Werbowsky, as well as under Fed. R. Civ. Proc. 23.1, the Court should dismiss the derivative claims for failing to make the requisite pre-suit demand.

## Conclusion

The Complaint should be dismissed because there is no implied private right of action under ICA § 36(a) --- the sole federal claim --- and this Court should not entertain supplemental jurisdiction over the state law claims. In any event, the Complaint should be dismissed for failure to comply with Rule 23.1 and Maryland law on pre-litigation demand.

Dated:   February 6, 2004

Respectfully submitted,

ARMSTRONG TEASDALE LLP

s/Frank N. Gundlach
By:_____
       Frank N. Gundlach
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
       Tel.:  (314) 621-5070
       Fax:  (314) 621-5065

POLLACK & KAMINSKY

s/Daniel A. Pollack
By:_____
       Daniel A. Pollack
       Edward T. McDermott
       Anthony Zaccaria
114 West 47th Street
New York, New York 10036
       Tel.:  (212) 575-4700
       Fax:  (212) 575-6560

*Attorneys for AIM International Funds, Inc., A I M Advisors, Inc., INVESCO International Funds, Inc., INVESCO Funds Group, Inc., T. Rowe Price International Funds, Inc., T. Rowe Price International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of February, 2004, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> Eugene Barash
> Korein Tillery
> 701 Market Street
> St. Louis, Missouri  63101

> Stephen M. Tillery
> Korein Tillery
> 10 Executive Woods Court
> Swansea, Illinois  62226

> George A. Zelcs
> Korein Tillery
> Three First National Plaza
> 70 West Madison, Suite 660
> Chicago, Illinois  60602

> Andrew S. Friedman
> Bonnett, Fairbourn, Friedman
>  & Balint, P.C.
> 2901 N. Central Ave., Ste. 1000
> Phoenix, Arizona  85012

I hereby certify that on this 6th day of February, 2004, I mailed by United States Postal Service, the foregoing to the following non-registered participants:

> Francis J. Balint, Jr.
> Bonnett, Fairbourn, Friedman
>  & Balint, P.C.
> 2901 N. Central Ave., Ste. 1000
> Phoenix, Arizona  85012

***Attorneys for Plaintiff and the Class***

s/ Frank N. Gundlach